[No. 15772–8–I.   Division One.   May 12, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. WAYNE J. BERGMAN, *Appellant*.

*Paris K. Kallas* of *Washington Appellate Defender Association,* for appellant.

*Seth Dawson, Prosecuting Attorney,* and *Alfred Gehri* and *Seth Aaron Fine, Deputies,* for respondent.

JOHNSEN, J.*—Wayne J. Bergman appeals his conviction for three counts of second degree burglary. He alleges that the trial court erred in denying his motion for a mistrial after the prosecutor cross–examined him regarding an alibi witness. We affirm.

At 5 p.m. on April 19, 1984, Victim 1 arrived home to find that his home had been burglarized. Missing was a microwave oven, two television sets, a gas can half full of pennies, and a knife. At 3:20 p.m. that day, a neighbor saw a man in a beat–up light green Ford Pinto with a brownish–tan door making a left turn off of her street. She noticed something the size of a microwave or a television covered with a sheet in the backseat. The neighbor tentatively identified Bergman in a lineup.

On the afternoon of April 27, 1984, Victim 2's mother, who lived in a trailer facing Victim 2's front door, called her at work and told her that someone had broken into her (Victim 2's) home. A microwave oven and some jewelry had been taken. Victim 2's mother had heard someone in her daughter's home over the intercom system set up between the two residences. When she went to her daughter's to investigate, she saw a green Pinto with the front door on the driver's side smashed in and half of the front grill gone.

---

*Judge Oluf Johnsen is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

A man came out of Victim 2's home and declared that the resident of the home had damaged his car, owed him $400, and he wanted to collect it. Victim 2's mother wrote down the license number of the car, HD7731. She identified Bergman in a lineup.

On the afternoon of April 29, 1984, Victim 3 returned to her home to find that it had been burglarized. A television, jewelry box, watch, and gun were missing. That same day, Victim 3's neighbor arrived home to find a man walking down her driveway. He asked her to give him a short tow so he could compression start his car, a light green Pinto with body damage. The neighbor subsequently identified Bergman as the driver of the Pinto.

At the time of the burglaries, Bergman was staying with his girl friend about 25 to 50 percent of the time. The girl friend testified that Bergman was driving a 1974, pea green Pinto with a dent on the driver's side.

On May 4, 1984, detectives from the Snohomish County Sheriff's Department searched the girl friend's apartment and arrested Bergman. A detective saw a light green Pinto with quite a bit of body damage parked in the back parking lot of the apartment complex. Its license number was HD7731. The detectives confiscated miscellaneous jewelry. Victim 3 later identified several items as pieces which had been taken from her home. Bergman was charged by second amended information with three counts of second degree burglary, count 1 for the burglary on April 29, count 2 for the burglary on April 19, and count 3 for the burglary on April 27.

Bergman testified in his defense. He stated that he usually drives a 1974 gold Mazda, but the car broke down in April 1984, and he borrowed a green Pinto from a friend. He denied ever being at any of the burglarized residences and testified that the jewelry found in his house on May 4, 1984, came from a swap meet, or perhaps was traded for drugs.

Bergman's sister testified at the trial. Based on entries in her diary, she stated that Bergman came over to her apart-

ment on April 19, 1984, the day of the burglary charged in count 2. She did not recall what time of day this was except that it was before 6 p.m. She testified that on April 27, 1984, the day of the burglary charged in count 3, Bergman and his girl friend came over to her house at around 12:30 p.m. She stated that they all played bingo until 3 p.m. at Totem Lake. Bergman's sister also testified that on April 29, 1984, the day of the burglary charged in count 1, she and Bergman went to a flea market together around 11 a.m. They stayed 2 or 3 hours. She testified that she never contacted the Snohomish County Sheriff's Department to tell them about her diary entries. Bergman did not object to this latter testimony.

During cross examination of Bergman, the following occurred:

Q. [Y]ou knew that you'd been accused of committing these burglaries just a few weeks before?
A. From what the police told me.
Q. And you had a copy of the charges, didn't you?
A. Yes, sir.
Q. And on the copy of the charges is a date, right?
A. Yes, sir.
Q. And you didn't have your sister contact the police, did you?
A. No, I didn't. What for?

Bergman moved for a mistrial on the basis that the last question violated his due process rights under *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). The court denied the motion. The jury returned a guilty verdict on all three counts of second degree burglary.

█ Bergman alleges that the trial court erred in denying his motion for a mistrial after the prosecutor asked him whether he had his sister contact the police. *Doyle v. Ohio, supra,* is distinguishable. In that case, the Court held that it violates due process for a prosecutor to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his or her

failure to have told the story after receiving *Miranda* warnings at the time of arrest. *Doyle,* at 611, 618–19. *Doyle* does not address the situation in this case where the prosecutor asks the defendant on cross examination whether shortly after being arrested, he asked a third person to contact the police with an alibi. Under these circumstances, there was no violation of due process, as there was no question regarding a defendant's post–arrest silence. *See State v. Hatley,* 41 Wn. App. 789, 801, 706 P.2d 1083 (1985). The questions posed to Bergman's sister went to her credibility as a witness which is a proper area of cross examination. *State v. Sands,* 123 N.H. 570, 467 A.2d 202, 228–29, 37 A.L.R.4th 904 (1983); *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771, 782 (1977). The court did not err in denying Bergman's motion for a mistrial.

Even if Bergman's due process rights had been violated by the prosecutor's question, any resulting error was harmless. A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error. Under the "overwhelming untainted evidence" test, the appellate court looks only at the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *State v. Guloy,* 104 Wn.2d 412, 425–26, 705 P.2d 1182 (1985).

The untainted evidence in this case was overwhelming. It included the presence of Bergman's car at or near the location of the three burglaries, the identification of the car's license number, the evidence found in the apartment of Bergman's girl friend, the view of Bergman at the scene of the burglary charged in count 3, the identification of Bergman in the lineup by those who saw him near all three of the burglarized homes, and the fact that Bergman never objected to the same information being elicited from his sister on cross examination as the prosecutor tried to elicit from him on cross examination.

276

Judgment affirmed.

SCHOLFIELD, C.J., and SWANSON, J., concur.