# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 71014-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH PATRICK HAMMOND, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 24, 2014 |
| | ) | |

LAU, J. — Keith Hammond appeals his conviction for one count of assault in the second degree (domestic violence) and one count of domestic violence misdemeanor violation of a court order. Hammond argues that the trial court abused its discretion when it declined to order a mistrial after excusing one of the jurors for alleged misconduct. He also contends that his defense counsel was ineffective when he failed to move for a mistrial. Because Hammond failed to show any prejudicial juror misconduct warranting a mistrial and because his counsel's performance was neither deficient nor prejudicial, we affirm the judgment and sentence.

## FACTS

Keith Hammond was charged by amended information on one count of assault in the second degree (domestic violence) and one count of domestic violence

misdemeanor violation of a court order.  During the trial, a juror interrupted the proceedings several times.

During witness testimony on the first day, a juror asked if the jury would be able to view a disc that had been marked as an exhibit.  The court explained that the disc had not yet been admitted.  On the second day, the following exchange occurred:

> Juror:  Are we ever going to get the official law that is alleged to have been broken in writing for us to compare?
> Court:  Yes.  At the end of the case, after you've heard all of the evidence, then I will give you the jury instructions that will set forth all of the elements of each crime.
> Juror:  Including the RCW or whatever it is?
> Court:  It may not list the RCW, but it is the RCW.  So you'll have—you don't have to worry about it at this juncture, but you will get it before you have to make a decision.
> Juror:  I just wanted to make sure I'd have the letter of the law in front of me.

Report of Proceedings (RP) (June 26, 2013) at 34–35.  It is unclear which juror made these remarks during the first two days of trial, but a later remark suggests it may have been juror 10.[1]  Later that day, the court discovered that juror 10 made a remark to the bailiff as she was escorting the jury to the jury room speculating whether there would be alcohol-related evidence.  Accordingly, the trial court reminded the jury that they should not discuss the case:

> I do want to remind the jurors though, however, that the admonition is not to discuss the case.  That includes any of the testimony that you're hearing.
> So I know you probably have questions and may have concerns or, you know, about the testimony and what's going to be coming up with future witnesses, but it is not appropriate to discuss the evidence until it's—you've heard all the evidence and you get to the jury room.

---

[1] The court later noted that juror 10 was "very involved."  RP (June 26, 2013) at 65.

RP (June 26, 2013) at 65. During the trial, the court sustained an objection, and a juror asked, "When you say 'strike,' does that mean that we are not supposed to remember that statement?" The court explained: "That's exactly right. Do the best you can." RP (June 26, 2013) at 89.

On the third day of trial, juror 10 had a lengthy exchange with the court—without the other members of the jury present—regarding whether the jury would be allowed to view illustrative exhibits during their deliberations. When the jury returned to the courtroom, another juror also asked about their access to illustrative exhibits. At the end of the day, the court discussed the problem of the illustrative exhibits with counsel. Defense counsel noted that because two jurors raised the same issue independently of each other, it was possible that they had been discussing the evidence in the jury room. Both the court and the State voiced the same concern. The State expressed particular suspicion toward juror 10, who had been "the most vocal" throughout the trial. Defense counsel shared the State's concern, and the court suggested that the parties take the weekend to consider whether they wanted to excuse juror 10. The following Monday, the State moved to excuse juror 10 with no objection from Hammond, and the court excused juror 10 outside the presence of the other jury members. No party requested a mistrial. The jury found Hammond guilty on both counts. Hammond appeals.

## DISCUSSION

### Standard of Review

We review a trial court's refusal to grant a mistrial for abuse of discretion. State v. Gilcrist, 91 Wn.2d 603, 613, 590 P.2d 809 (1979). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds,

or for untenable reasons." State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993).

Ineffective assistance of counsel claims present a mixed question of law and fact, and we therefore review such claims de novo. In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).

### Mistrial

Hammond contends the trial court erred when it failed to consider a mistrial. In the alternative, the trial court should have "investigated the situation more." Brief of Appellant, 7. The Washington Constitution provides, "The right of trial by jury shall remain inviolate . . . ." Const. art. I, § 21. "The right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct." State v. Tigano, 63 Wn. App. 336, 341, 818 P.2d 1369 (1991). A trial court may grant a new trial based on juror misconduct when it affirmatively appears that a substantial right of the defendant was materially affected. State v. Tandecki, 120 Wn. App. 303, 310, 84 P.3d 1262 (2004). "As a general rule, the trial courts have wide discretionary powers in conducting a trial and dealing with irregularities which arise. A mistrial should be granted only when . . . the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly." Gilcrist, 91 Wn.2d at 612 (citations omitted). Only errors that may have affected the outcome of the trial are prejudicial. Gilcrist, 91 Wn.2d at 612.

Although some irregular juror comments occurred during Hammond's trial, none amounted to prejudice warranting a mistrial. Hammond alleges that some of juror 10's comments imply that improper conversations had occurred in the jury room. Br. of

Appellant at 8. Nothing in the record suggests any improper conversations took place. In fact, the jurors were reminded more than once early in the trial to refrain from such conversations. The bailiff reminded juror 10 not to discuss any of the evidence as she was leading the jurors back to the jury room. The court also specifically admonished the jury, reminding them, "[i]t is not appropriate to discuss the evidence until it's—you've heard all the evidence and you get to the jury room." RP (June 26, 2013) at 65. We presume that the jury will follow the court's instructions. State v. Foster, 135 Wn.2d 441, 472, 957 P.2d 712 (1998). The record shows that the jurors followed the court's instructions. For instance, even though juror 10 had questions and concerns about the trial, he privately wrote a note to the court and gave it to the bailiff so as not to discuss his questions in front of the other members of the jury.[2] Further, when juror 10 was eventually excused, he explained that the jury had not discussed the case:

> My detail was literally we are not talking about the case. I go back and I watch video game replays with my headphones on. That's literally what I was going to say, is for the integrity of the case, we are not discussing.
> I think it was an empathetic comment, I don't know, because I don't talk to anybody back there. I hope me saying that didn't just ruin everything.

RP (July 1, 2013) at 7. Though the court had some concern over improper jury behavior, the court properly instructed the jury and the record shows that the jury

---

[2] The following exchange occurred outside the presence of the other jurors:
The Court: So just keep in mind that I'm more than happy you are engaged in asking questions. Please, if things come up about the evidence, please don't share with anyone in there, the other jurors.
Be careful about that. Be careful, too, if you're asking questions about evidence, if you're addressing them to the bailiff and she's in the room with all the others, be aware it's probably best not to. I would be more than happy to talk to you.
Juror 10: That's why I wrote a letter originally, and asked her to give it to you, or give you a note.
RP (June 27, 2013) at 64.

complied. Nothing in the record shows that improper conversations occurred in the jury room.

Hammond nevertheless emphasizes that "the prosecutor even acknowledge[ed] that it appeared the jurors might be doing outside research or deliberating early." Br. of Appellant, 9. Hammond misreads the record. The statement Hammond refers to occurred after the court had a private discussion with juror 10 about the availability of certain illustrative exhibits. Reflecting on a statement juror 10 made during this discussion,[3] the State expressed some concern: "Instantly I thought, 'oh, my gosh, have you looked up something?' I'm getting a little worried about what [juror 10] might be doing with the jury back there." RP (June 27, 2013) at 82.[4] Importantly, the State's concern was purely speculative—there was no evidence that juror 10 had examined extraneous information or that he had engaged other jurors in improper conversations. Baseless suspicion of juror misconduct unsupported by the record cannot amount to prejudice. If anything, juror 10's comments show that he was concerned about not "ruin[ing]" the "integrity" of the case. RP (July 17, 2013) at 7. His own conduct demonstrates that he strictly adhered to the court's instruction not to discuss the case.

---

[3] The statement resulting in the State's concern is as follows. Outside the presence of the other jury members, juror 10 explained why he believed the jury should be allowed to view certain exhibits:

> We expect middle schoolers to do their homework and they're allowed to look in books and look at best sources, and we teach them that the best sources are those most closely acquainted with the events, so it makes sense that the flip charts would be the closest associated to the defendant and the plaintiff and the witnesses, and I guess I fail to understand why we are not allowed to look at those during the decision-making process, with something as serious as this.

RP (July 27, 2013) at 62.

[4] This discussion of juror 10 occurred at the end of the day on a Friday. When the court reconvened on Monday, juror 10 was promptly excused.

Further, an allegation that a jury has deliberated prematurely, without more, is not enough to warrant a new trial. Nelson v. Placanica, 33 Wn.2d 523, 527, 206 P.2d 296 (1949). A party petitioning for a new trial on the grounds of premature deliberations must establish that the communication prejudiced the outcome of the trial. Tate v. Rommel, 3 Wn. App. 933, 938, 478 P.2d 242 (1970). We held that even statements between jurors expressing their opinions on the ultimate outcome of a trial do not necessarily cause prejudice. See Tate, 3 Wn. App. at 937–38 ("[T]he mere revealing of an opinion, as to the ultimate outcome of a trial by an otherwise unbiased juror, before submission of the case to the jury, based upon evidence properly received, while not to be condoned, does not, standing alone, constitute such misconduct as to justify the granting of a new trial."); see also State v. Hatley, 41 Wn. App. 789, 794, 706 P.2d 1083 (1985) ("If every verdict were subject to impeachment if the losing side could obtain an affidavit indicating that in making up his or her mind, the juror reached certain critical conclusions prior to commencement of deliberations, disregarded some evidence, misunderstood an instruction, misapplied the rules of law, or completely misunderstood the testimony of one or more witnesses, then a jury verdict would simply be the first round in an interminably prolonged trial process.").

Hammond not only failed to show any premature deliberations occurred, but he also failed to show that the content of any of these allegedly improper communications caused him prejudice. Short of vague assertions that the jurors engaged in "inappropriate statements and conduct," Hammond fails to demonstrate how those statements or conduct caused the degree of prejudice warranting a mistrial. See Gilcrist, 91 Wn.2d at 612 ("[A] mistrial should be granted only when the defendant has

-7-

been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly."). Moreover, juror 10's comments indicate he was interested in fairly innocuous issues—what evidence the jury would be allowed to view, whether they would receive the legal definition of assault, and what it means to "strike" a statement from the record. Nothing in the record shows that juror 10 engaged in any communications expressing bias toward Hammond. Therefore, it is unlikely that any premature deliberations—had they even occurred—would have involved any content prejudicial to Hammond. Tate, 3 Wn. App. at 938 (requiring a party petitioning for a new trial on the ground of premature deliberations to establish that the communication prejudiced the outcome of the trial).

We also conclude that no fact-finding hearing was necessary. Hammond claims that "the court erred by not . . . conducting any further inquiry as to the impact of the misconduct on the remaining jurors." Br. of Appellant at 10–11. But the decision to conduct a fact-finding hearing regarding the extent of jury misconduct is within the trial court's discretion. State v. Cummings, 31 Wn. App. 427, 431, 642 P.2d 415 (1982). Neither the trial court nor the parties had evidence of any jury misconduct. Their concern amounted to speculative suspicion based on juror 10's unusual level of engagement. The trial court reminded the jury not to discuss the case, and juror 10's conduct and comments indicate the jury followed those instructions. The trial court also excused juror 10 as a precaution. Given these circumstances, we cannot say that the trial court abused its discretion by declining to hold a fact-finding hearing on the issue. This is especially true given that "premature deliberations . . . though not necessarily

-8-

proper, [are] not as serious as" other forms of jury misconduct. Davis v. Woodford, 384 F.3d 628, 653 (9th Cir. 2004).

Hammond also argues that a mistrial was warranted based on the application of the Hopson factors. See State v. Greiff, 141 Wn.2d 910, 921, 10 P.3d 390 (2000) ("In determining whether the effect of an irregular occurrence at trial affected the trial's outcome, this court examines: (1) the seriousness of the irregularity; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it." (Citing State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989).). Neither Greiff nor Hopson involved jury misconduct, and the Hopson factors are not met here.[5] As discussed above, there was no evidence of any serious irregularity here other than vague suspicion. Further, the trial court instructed the jury not to discuss the evidence prior to deliberations.

In sum, the trial court and counsel were suspicious of juror 10's level of engagement. As a precaution, the court excused him. However, this mere suspicion is insufficient to show misconduct or prejudice. Hammond also failed to show that any misconduct occurred, and even if any misconduct occurred, he failed to show how the content of any improper communications caused him prejudice. Hammond's mistrial and evidentiary hearing claims lack merit.

### Ineffective Assistance of Counsel

Hammond contends that trial counsel's failure to move for a mistrial or seek further investigation into the impact the alleged juror misconduct had on the fairness of

---

[5] Hammond concedes that the second factor is not relevant here. Br. of Appellant at 9.

the trial, deprived him of his right to effective assistance of counsel. Given our dispositive resolution discussed above, counsel's performance was neither deficient nor prejudicial.

## CONCLUSION

For the reasons discussed above, we affirm the judgment and sentence.

WE CONCUR: