# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47804-8-II |
| Respondent, | |
| v. | |
| CHRISTOPHER POMA, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. – Christopher Poma appeals his assault in the second degree conviction, alleging (1) instructional error, (2) ineffective assistance of counsel, (3) prosecutorial misconduct, (4) cumulative error, (5) improper imposition of legal financial obligations (LFOs), and (6) appellate costs should be denied if the State requests them. We affirm Poma's conviction, but remand to the sentencing court to conduct a proper inquiry into his ability to pay LFOs, and we deny appellate costs.

## FACTS

On January 7, 2012, Courtney Grover was playing poker at the Oak Tree Casino when he noticed Poma and his younger brother, Dominic Poma, at the table behind him. Grover had been drinking that evening. Grover recognized the brothers from two nights before when they all played poker together. On that night, the brothers laughed at Grover when he lost, which is considered improper gambling etiquette. Grover became angry that night, used harsh language, and left the table.

On the night of January 7, Grover ran into Poma and Dominic[1] in the bathroom. Grover made a derogatory remark about the brothers going to the bathroom together. Poma responded, "we're two f****ts that are going to beat the shit out of you." 1 Report of Proceedings (RP) at 174. Poma claims Grover stated, "Well, we can go outside and settle this problem." 3 RP at 318. Grover, however, claims he told Poma he did not want a fight and then went outside the casino to smoke a cigarette.

Poma and Dominic followed Grover outside. Grover was sitting on a bench, smoking a cigarette. (1 RP 176-78) As the brothers came towards Grover, he stood up. According to Michelle Rabideau, a casino patron sitting nearby, Grover put his hands in his pockets, and swayed back and forth with his head tilted down. He appeared intoxicated. Poma claims Grover then "chest-bump[ed]" him. 3 RP at 319. Rabideau did not see this contact. She observed Poma hit Grover "extremely hard" which caused Grover to fall to the ground. 2 RP at 223. Poma then straddled Grover and continued to hit Grover while he lay on the ground. Ultimately, Poma broke Grover's jaw and fractured Grover's right shoulder.

The State charged Poma with assault in the second degree. Poma argued he acted in self-defense and in defense of his brother. Poma testified he had never been in a fight before and he hit Grover to "keep [Grover] from hurting me or my brother." 3 RP at 347.

The trial court instructed the jury on self-defense and defense of another. The court instructed, "The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured." Clerk's Papers (CP) at 36; Instr. 15. The court then instructed on actual danger, stating:

---

[1] Because Dominic Poma shares the same last name with the defendant, we use Dominic's first name to make the opinion clearer. We intend no disrespect.

2

A person is entitled to act on appearances in defending himself or another, if he believes in good faith and on reasonable grounds that he or another is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

CP at 37; Instr. 16. The court also instructed the jury, "It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground." CP at 38; Instr. 17. Poma proposed these instructions. The court also gave a first aggressor instruction, stating:

No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon, use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

CP at 39; Instr. 18.

During closing argument, the prosecutor stated, "So I ask that you guys find him guilty. And before you do that, I want to remind you of instruction 3.[2] There's a final sentence in that. You go in, walk down here, you think about that, think about this as well." 3 RP at 414. The prosecutor continued, "If you take the walk down those two steps into that room and you believe when you leave here that he did and you go and sit in that room and pick your foreperson and you still believe it, the State has carried its burden." 3 RP at 415. Poma did not object to these remarks.

The jury found Poma guilty as charged. The sentencing court imposed a four-month standard range sentence, as well as $30,187.03 in restitution for Grover's medical bills and $1,045 in discretionary LFOs, which included $445 for sheriff service fees and $150 for an incarceration fee. During the sentencing hearing, the court did not inquire into Poma's ability to pay the

---

[2] The last sentence of Jury Instruction 3 states, "If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." CP at 24.

discretionary LFOs, but defense counsel commented that Poma "lives and works in California." 3 RP at 436. Our record includes a 2012 petition for appointment of counsel, which states that Poma works part time in California, making $8 per hour. Poma appeals his conviction and sentence.

ANALYSIS

I.  FIRST AGGRESSOR INSTRUCTION

Poma first contends the trial court erred in giving the jury a first aggressor instruction. We disagree.

The court instructed the jury, without objection, that "if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense." CP at 39.

Poma failed to object to the first aggressor instruction below. To raise this issue for the first time on appeal, Poma must show that giving it involves a manifest error affecting a constitutional right. RAP 2.5(a)(3). Due process requires the State to prove every element of the charged offense beyond a reasonable doubt before a judgment of guilty may be entered. *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). Once raised by a defendant, the State has the burden of proving the absence of self-defense beyond a reasonable doubt. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A first aggressor instruction may prevent the jury from considering whether the State has proved beyond a reasonable doubt that the defendant did not act in self-defense. *State v. Gordon*, 172 Wn.2d 671, 678, 260 P.3d 884 (2011). Therefore, the first aggressor instruction implicates a defendant's constitutional rights. Next, Poma must show the error was manifest.

"Where there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense, an aggressor instruction is appropriate." *State*

*v. Riley*, 137 Wn.2d 904, 909-10, 976 P.2d 624 (1999). A first aggressor instruction is appropriate even if there is conflicting evidence as to whether the defendant's conduct precipitated a fight. *Riley*, 137 Wn.2d at 910. An aggressor instruction is inappropriate, however, if the defendant simply used belligerent language, or if the defendant's conduct that allegedly provoked the need to act in self-defense was the assault itself. *Riley*, 137 Wn.2d at 911; *State v. Brower*, 43 Wn. App. 893, 901-02, 721 P.2d 12 (1986). Here, our review of the record leads us to conclude that the trial court erred by instructing the jury on Poma being the first aggressor because Poma's conduct that allegedly provoked the need to act in self-defense was the assault itself.

However, a manifest constitutional error is subject to a constitutional harmless error analysis. *State v. Pineda-Pineda*, 154 Wn. App. 653, 672, 226 P.3d 164 (2010). A constitutional error is harmless if we are assured beyond a reasonable doubt that the jury verdict cannot be attributed to the error. *State v. Lui*, 179 Wn.2d 457, 495, 315 P.3d 493, *cert. denied*, 134 S. Ct. 2842 (2014).

Here, we are assured beyond a reasonable doubt that the error was harmless. Grover denied that he made derogatory comments to Poma and Dominic inside the casino, that he told Poma they should go outside to settle the matter, or that he chest bumped Poma. An eye witness testified that Grover was outside, sitting on a bench, smoking a cigarette when Poma exited the casino. Grover stood up when Poma approached and put his hands in his pockets. Grover appeared intoxicated and was having trouble standing up straight. The eye witness did not see Grover chest bump Poma. Poma then punched Grover so hard that Grover fell to the ground. Poma stood over Grover and continued to punch him. These facts are sufficient to show beyond a reasonable doubt that the

jury would have still found Poma guilty. Thus, improperly instructing the jury on being the first aggressor was harmless.[3]

## II.    INEFFECTIVE ASSISTANCE

Poma next contends defense counsel provided ineffective assistance of counsel by failing to propose jury instructions that Poma may act lawfully in not only defending himself, but also his brother. We disagree.

A defendant claiming ineffective assistance of counsel has the burden to establish both that counsel's representation was deficient and that the representation prejudiced the defendant's case. *Strickland*, 466 U.S. at 700; *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700. A lawyer's representation is deficient if after considering all of the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Deficient representation prejudices a defendant if there is a "reasonable probability that, but for counsel's deficient [representation], the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862. Our scrutiny of counsel's representation is highly deferential; we strongly presume that counsel was effective. *Grier*, 171 Wn.2d at 33.

Here, defense counsel proposed, and the court accepted, three instructions on lawful force. The first states, "[t]he use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured." CP at 36. The second states, "A person is entitled to act on appearances in defending himself or another, if he believes in good faith

---

[3] Poma also notes in the last sentence of this section of his brief that counsel provided ineffective assistance for failing to object to the first aggressor instruction. Based on our disposition of this issue, Poma cannot show deficient performance; thus, his claim fails. *Strickland v. Washington*, 466 U.S. 668, 700, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

and on reasonable grounds that he or another is in actual danger of injury." CP at 37. And, the third, states that it is lawful for "a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack." CP at 38. Only one of the instructions uses the terms "or another" regarding defending others. CP at 37.

Even assuming counsel's performance was deficient for not proposing jury instructions that all state "or another," Poma cannot show prejudice to support his ineffective assistance of counsel claim.

Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the trial would have been different. *Grier*, 171 Wn.2d at 34. The result, here, would not have been different.

Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law. *State v. Soper*, 135 Wn. App. 89, 101, 143 P.3d 335 (2006). A party cannot show ineffective assistance of counsel for counsel's failure to object to jury instructions when "the jury instructions as a whole [are] sufficient." *State v. Davis*, 174 Wn. App. 623, 638, 300 P.3d 465 (2013).

Here, the court instructed the jury on self-defense with multiple instructions. Jury instruction 16 clearly informed the jury that "[a] person is entitled to act on appearances in defending himself or another, if he believes in good faith and on reasonable grounds that he or another is in actual danger of injury." CP at 37. The court further instructed the jury, "[Y]ou must consider the instructions as a whole." CP at 22. We presume juries follow the court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009).

Because the trial court instructed the jury to consider the instructions as a whole, and we presume the jury followed the court's instruction, and because counsel argued his theory of the case, Poma cannot show the outcome of the trial would have been any different. Poma cannot show prejudice. Without prejudice, his ineffective assistance of counsel claim fails.

II.    PROSECUTORIAL MISCONDUCT

Poma next contends he was denied a fair trial based on prosecutorial misconduct. We disagree.

During closing remarks, the prosecutor stated, "I want to remind you of instruction 3. There's a final sentence in that. You go in, walk down here, you think about that." 3 RP at 414. The prosecutor continued, "If you take the walk down those two steps into that room and you believe when you leave here that he did and you go and sit in that room and pick your foreperson and you still believe it, the State has carried its burden." 3 RP at 415. There was no objection to these remarks.

To succeed on a prosecutorial misconduct claim, a defendant must show not just improper conduct, but also prejudice. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). Usually misconduct claims can be efficiently remedied at the trial court stage of the proceedings. A defendant who waits until appeal to raise misconduct arguments bears a heavy burden. *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). We will only reverse if prosecutorial misconduct is "so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *Russell*, 125 Wn.2d at 86.

Poma claims jury opinions regarding guilt should only be formed after the jury is in the jury room and has picked a foreperson. He argues the prosecutor misled the jury into thinking

8

deliberations started before it adjourned to the jury room. Poma contends the prosecutor's comments minimized the State's burden of proof and undermined the deliberative process. Poma is incorrect.

Deliberations by the jury "'provide the jury with the opportunity to review the evidence in light of the perception and memory of every member.'" *State v. Lamar*, 180 Wn.2d 576, 585, 327 P.3d 46 (2014) (quoting *People v. Collins*, 552 P.2d 742, 746 (Ca. 1976)). But, "'[c]ommon experience indicates a juror, or a judge, may form impressions or opinions as to the outcome of a case as he hears each bit of evidence.'" *State v. Hatley*, 41 Wn. App. 789, 794, 706 P.2d 1083 (1985) (quoting *Tate v. Rommel*, 3 Wn. App. 933, 937, 478 P.2d 242 (1970)).

Here, the prosecutor stated that if the jury walks into the jury room, sits down, picks a foreperson, thinks about the case, and still thinks Poma is guilty beyond a reasonable doubt then the State has met its burden. Even assuming this comment was improper, it is not so flagrant and ill-intentioned that it caused an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. For the foregoing reason, this issue is waived.

IV.    CUMULATIVE ERROR

Poma argues that the cumulative effect of the various errors he assigns to the proceedings below produced a fundamentally unfair trial. An accumulation of errors may prejudice a criminal defendant, even if no single error is sufficiently prejudicial. *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.2d 813 (2010). However, Poma has only established harmless error on one of his claims and potential error on two others, but has shown no prejudice. Therefore, we reject his cumulative error argument.

V.    LFOs

Poma argues that the sentencing court erred by imposing discretionary LFOs without conducting an individualized inquiry into his ability to pay and without determining whether the incarceration and sheriff service fees were actually incurred.  We agree.

In *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015), the Supreme Court affirmed the appellate court's discretion to decline review of unpreserved LFO claims.  However, since its decision in *Blazina*, the court has consistently remanded cases to the trial court where it did not conduct an individualized inquiry.  *See State v. Lyle*, 188 Wn. App. 848, 355 P.3d 327 (2015), *remanded*, 184 Wn.2d 1040 (2016); *State v. Marks*, 185 Wn.2d 143, 146, 368 P.3d 485 (2016).

Because the trial court conducted no individualized inquiry into Poma's ability to pay, we exercise our discretion and remand the case to the trial court to conduct a proper inquiry into Poma's present and future ability to pay discretionary LFOs.  On remand, Poma may raise his argument regarding the amount incurred for incarceration and sheriff service fees.

VI.    APPELLATE COSTS

Lastly, Poma opposes appellate costs in light of *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016), asserting that he does not have the ability to pay.  In light of Poma's indigent status; evidence in our record that prior to his incarceration Poma worked part time, making $8 hour in California; his large restitution obligation; and our presumption under RAP 15.2(f) that Poma remains indigent "throughout the review" unless the trial court finds that his financial condition has improved, we exercise our discretion to waive appellate costs in this matter.  RCW 10.73.160(1).

We affirm Poma's conviction, but remand to the sentencing court to conduct a proper inquiry into Poma's ability to pay LFOs. .

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Johanson, J.

_____
Maxa, A.C.J.