16 P.3d 601 (2001)
142 Wash.2d 868
In the Matter of the Personal Restraint Petition of James Leroy BRETT, Petitioner.
No. 63835-7.
Supreme Court of Washington, En Banc.
Decided January 25, 2001.
*602 Cohen & Iaria, Michael Paul Iaria, Bell, O'Connor, Flegenheimer & Leong, Barry L. Flegenheimer, Jonathan Stuart Solovy, Seattle, for Petitioner.
*603 Arthur D. Curtis, Clark County Pros., Richard Melnick, Deputy Clark County Pros., Vancouver, Christine Gregoire, Atty. Gen., John Joseph Samson, Asst., Olympia, for Respondent.
JOHNSON, J.
Petitioner James Leroy Brett (Brett) was tried, convicted, and sentenced to death for the aggravated first degree murder and first degree felony murder of Kenneth Milosevich. On direct appeal, this court affirmed Brett's conviction and sentence. State v. Brett, 126 Wash.2d 136, 892 P.2d 29 (1995). Brett subsequently filed a personal restraint petition in this court raising, among other issues, ineffective assistance of counsel. We ordered a reference hearing in superior court on the issue of ineffective assistance of counsel during the guilt and penalty phases of Brett's trial.
We hold Brett received ineffective assistance of counsel during both the guilt and penalty phases of his trial. We grant Brett's personal restraint petition, reverse his conviction, vacate his sentence of death, and remand for a new trial. The record before us, including the testimony from the reference hearing, establishes that trial counsel, at the time of trial preparation, knew or should have known of Brett's significant medical and mental conditions. The record establishes that substantial medical and psychiatric opinion was available at the time of Brett's trial to support a defense theory. The record further establishes that counsel failed to conduct a reasonable investigation into these medical and mental conditions. Finally, the reference hearing's expert legal testimony establishes that counsel, by failing to take any meaningful steps to develop the evidence available for use in Brett's defense, deprived Brett of effective counsel.
FACTS AND PROCEDURAL HISTORY
The circumstances of the crime in this case are described in detail in this court's disposition of Brett's direct appeal, which we will not repeat here. Brett, 126 Wash.2d at 147-54, 892 P.2d 29. We provide here only a brief description of events necessary to resolve the issues presented.
On December 3, 1991, the crime occurred and Brett was arrested two days later. On December 6, 1991, Irving L. Dane (Dane) was appointed as counsel to represent Brett. On December 10, 1991, Brett was charged with aggravated first degree murder in violation of former RCW 10.95.020(9)(a), former RCW 10.95.020(9)(c), and former RCW 10.95.020(9)(d) (Laws of 1981, ch. 138, § 2). On January 22, 1992, the Clark County Prosecutor filed a notice of intent to seek the death penalty. On February 6, 1992, Michael Foister (Foister) was appointed as second counsel to represent Brett. On March 16, 1992, Teresa A. McMahill was appointed mitigation specialist and Tony Sahli was appointed guilt phase investigator. On March 27, 1992 and April 16, 1992, respectively, the State filed amended and second amended information, and added the charge of first degree felony murder. On May 8, 1992, neuropsychologist Dr. Robert G. Stanulis was appointed as the only mental health expert.
On June 4, 1992, Brett's trial began. On June 11, 1992, the jury rendered its verdict of guilt. On June 17, 1992, the defense moved for but was denied a 30-day continuance of the penalty phase to arrange for a fetal alcohol expert examination. On June 18, 1992, the jury rendered a death sentence.
In April 1995, on direct appeal, this court affirmed Brett's conviction and sentence. Brett, 126 Wash.2d 136, 892 P.2d 29. On November 26, 1996, Brett filed a personal restraint petition. In November 1998, pursuant to this court's order, a reference hearing was held in superior court to investigate whether Dane and Foister had rendered ineffective assistance of counsel.

ANALYSIS
The dispositive issue in this case is whether Brett received ineffective assistance of counsel during the guilt and penalty phases of his trial. We, therefore, need not address the other issues raised in Brett's personal restraint petition.
Both the Sixth Amendment to the United States Constitution and article I, section 22 (amendment 10) of the Washington *604 State Constitution guarantee the right to effective assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Hendrickson, 129 Wash.2d 61, 77, 917 P.2d 563 (1996). Counsel is ineffective when his or her performance falls below an objective standard of reasonableness and the defendant thereby suffers prejudice. Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. Prejudice is established when "there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." Hendrickson, 129 Wash.2d at 78, 917 P.2d 563 (citing State v. Thomas, 109 Wash.2d 222, 226, 743 P.2d 816 (1987)).
The inquiry in determining whether counsel's performance was constitutionally deficient is whether counsel's assistance was reasonable considering all of the circumstances. Strickland, 466 U.S. at 689-90, 104 S.Ct. 2052. To provide constitutionally adequate assistance, "counsel must, at a minimum, conduct a reasonable investigation enabling [counsel] to make informed decisions about how best to represent [the] client." Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994) (citing Strickland, 466 U.S. at 691, 104 S.Ct. 2052).
Ineffective assistance of counsel is a mixed question of law and fact. Strickland, 466 U.S. at 698, 104 S.Ct. 2052. Because claims of ineffective assistance of counsel present mixed questions of law and fact, we review them de novo. See, e.g., State v. S.M., 100 Wash.App. 401, 409, 996 P.2d 1111 (2000) (citing State v. White, 80 Wash.App. 406, 410, 907 P.2d 310 (1995)). Findings of fact from a reference hearing are reviewed for substantial evidence to support such findings of fact. See In re Personal Restraint of Gentry, 137 Wash.2d 378, 410, 972 P.2d 1250 (1999) (citing RAP 16.14(b)). Because this court ordered a reference hearing only, the legal conclusions flowing from such findings and testimony are reviewed de novo. See State v. Davis, 25 Wash.App. 134, 137 n. 1, 605 P.2d 359 (1980). This court, in the exercise of its original jurisdiction in capital personal restraint petitions, applies the reference hearing facts to the law and draws its own conclusions regarding claims of ineffective assistance of counsel.
A personal restraint petition will be granted if the petitioner establishes actual and substantial prejudice resulting from a violation of his or her constitutional rights or a fundamental error of law. In re Personal Restraint of Benn, 134 Wash.2d 868, 884-85, 952 P.2d 116 (1998), rev'd sub nom. on other grounds by Benn v. Wood, No. C98-5131RDB, 2000 WL 1031361 (W.D.Wash. June 30, 2000). The burden of proof is a preponderance of the evidence. In re Personal Restraint of Cook, 114 Wash.2d 802, 814, 792 P.2d 506 (1990) (citing In re Personal Restraint of Hews, 99 Wash.2d 80, 89, 660 P.2d 263 (1983)).
At Brett's reference hearing, a number of medical and psychiatric professionals testified for the petitioner. The experts offered testimony concerning Brett's medical and psychiatric conditions and whether such medical evidence was available at the time of defense counsel's trial preparation.
Dr. Julia T. Moore, a licensed, board-certified child and adult psychiatrist, testified. Dr. Moore reviewed Brett's Department of Juvenile Rehabilitation and school records, as well as other medical reports and records and affidavits from family members. She performed a clinical interview of Brett and concluded to a reasonable medical certainty that Brett suffered from bipolar disorder, fetal alcohol effect or alcohol-related neurodevelopmental disorder, and a psychiatric sequela as a consequence of poorly controlled diabetes. She further testified that Brett had suffered from bipolar disorder since at least age nine, and that medical information was available in 1991 (approximately one year prior to Brett's trial) to make this diagnosis.
Dr. Robert A. Olsen, a board-certified medical doctor of internal medicine, psychiatry, and geriatric psychiatry, offered testimony as to Brett's diabetes. Dr. Olsen spent at least 10 hours performing a review of Brett's medical records. Based upon his review of these records, Department of Corrections' records, and testimony from Brett's 1992 trial, Dr. Olsen diagnosed Brett with *605 "brittle" type 1 diabetes, a rare form of the disease, with severe medical and psychiatric consequences. Dr. Olsen testified that, in the short term, the disease could create wild fluctuations in blood sugar and could impair cognitive functions. In the long term, the disease could cause brain and heart damage, such as cognitive problems, dementia, coronary artery disease, peripheral vascular disease, and autonomic neuropathy. Brett's diabetic symptoms could have been aggravated by exposure to alcohol in childhood and throughout his adult life. Dr. Olsen concluded that the diabetes manifested itself when James Brett was nine years old. Dr. Olsen further stated that a psychiatrist or doctor of internal medicine could have rendered a like opinion in 1991 or 1992.
Dr. Michael A. Donlan, a medical doctor and expert in prenatal exposure to alcohol, testified by agreed stipulation at the reference hearing. Dr. Donlan had physically examined Brett and had reviewed Brett's medical, educational, and psychological records and the 1992 trial testimony. Dr. Donlan diagnosed Brett as suffering from fetal alcohol effect. Fetal alcohol effect is defined as a behavioral or cognitive abnormality evidenced through learning difficulties, deficits in school performance, poor impulse control, problems in social perception, deficits in higher level receptive and expressive language, poor capacity for abstraction or metacognition, and specific deficits in mathematical skills or problems in memory, attention, or judgment. Decl. of Michael A. Donlan, M.D. at 1-2 (Personal Restraint Pet. Br. of Pet'r at App. M). He also stated that in 1991, 1992, and at the time of his stipulation the diagnosis of fetal alcohol effect must be made by a qualified medical doctor or geneticist.
Dr. Robin A. LaDue, a licensed clinical psychologist with a specialty in neuropsychology and renowned expert on fetal alcohol exposure, testified as to the impact of Brett's fetal alcohol condition. Dr. LaDue formed her opinions from her review of Brett's medical records, his school records, affidavits, and Brett's testing scores. Dr. LaDue testified that Brett's fetal alcohol effect revealed "a pattern of brain damage most likely related to prenatal alcohol exposure." Reference Hr'g Report of Proceedings (Nov. 6, 1998) at 146. In her opinion, this brain damage had a "significant impact" on Brett's mental abilities, including his impaired judgment, his inability to understand cause and effect, and his difficulty controlling impulses.
Dr. LaDue testified that only a medical doctor or clinical geneticist trained in birth defects could render a diagnosis of fetal alcohol effect in 1991, 1992, or at the time of the reference hearing. A diagnosis of fetal alcohol effect could be made without reference to physical abnormalities provided that neuropsychological testing was performed. Dr. LaDue concluded that a competent expert could have rendered such an opinion in 1991 or 1992.
The State has neither presented contrary evidence nor argued the above medical evidence was unavailable. Therefore, the above evidence establishes what defense counsel would have known had it conducted a reasonable investigation into Brett's medical and psychological conditions.
At the reference hearing, Brett also presented uncontroverted testimony of three legal experts to clarify the objective standard of reasonable performance sufficient to meet the competence requirements of the Sixth Amendment to the United States Constitution and article I, section 22 (amendment 10) of the Washington State Constitution. All three legal experts concluded that defense counsel's failure to seek the timely appointment of co-counsel was ineffective to the extent it prevented defense counsel from providing a mitigation package to the prosecutor prior to the State's filing of the death penalty notice. Furthermore, the failure to seek the timely appointment of co-counsel contributed to defense counsel's subsequent failure to competently investigate Brett's severe medical and mental disorders.
As we discussed earlier, Dane was appointed as Brett's counsel on December 6, 1991. The State charged Brett with aggravated first degree murder on December 10, 1991. At the outset of Dane's appointment, Dane and others closely involved knew this case was a potential capital case. The State subsequently filed a notice of intent to seek the *606 death penalty on January 22, 1992. However, from the date Brett was charged to the date the death penalty notice was filed, Dane had reviewed only the available discovery and had spoken with only a few of Brett's family members. Dane had not presented any formal or written mitigation package. And, although Dane testified at the reference hearing that he had estimated it would take two lawyers at least 400 to 500 hours to adequately prepare and effectively try Brett's case, Dane did not seek the appointment of co-counsel Foister until February 6, 1992, two months after Dane's own appointment.
At the reference hearing, Dane testified that he knew Brett had diabetes and mental problems. He also testified that he knew background records were essential for a mental health professional's evaluation. Dane, however, did not obtain the necessary school, medical, and correctional records. Further, Dane did not contact civilian, law enforcement, or forensic witnesses. Prior to Foister's appointment as co-counsel, Dane had not conducted any factual or mitigation investigation or sought the assistance of a mitigation specialist or fact investigator. As Foister later testified, by the time he was appointed co-counsel, "[i]n relation to the things that needed to be done, a good number of things were not done." 9A Reference Hr'g Report of Proceedings (Nov. 10, 1998) at 629. Important aspects of case preparation relating to mental defenses and mitigation, such as the appointment of an investigator, mitigation specialist, and mental health experts, had been neglected for months.
Despite early notice of Brett's mental health problems, defense counsel did not seek to retain a single mental health expert until April 22, 1992, just over one month before Brett's trial began. However, Dr. Stanulis, the mental health expert, was not appointed to Brett's case until May 7, 1992. This critical error was exacerbated by the time needed to issue a temporary license to Dr. Stanulis, who was not licensed to practice in Washington State and would not have been able to testify in Brett's case without the temporary license. Thus, the appointment delays left Dr. Stanulis only 19 days to prepare before Brett's trial began. Yet, counsel did not seek a continuance of the trial. Furthermore, defense counsel provided Dr. Stanulis with Brett's school, medical, and Department of Corrections treatment records only two days before trial.
On the day Dr. Stanulis was scheduled to testify, Dr. Stanulis himself informed defense counsel he was a psychologist and not a psychiatrist who would be qualified to diagnose and testify on fetal alcohol syndrome and effect. Consequently, the only expert defense retained by the defense could not render expert opinion and could not be used to support a defense theory.[1]
In order to establish what should have been done, Brett called three legal experts to testify accordingly at the reference hearing. Miriam Schwartz, a federal public defender and an attorney experienced in trying homicide cases, testified concerning the performance of Brett's trial counsel. Schwartz stated that Brett received ineffective assistance of counsel because Dane and Foister "did too little, too late ...." 10B Reference Hr'g Report of Proceedings (Nov. 12, 1998) at 1111. Schwartz based her conclusion primarily on the following factors: (1) Dane failed to prepare a mitigation package to present to the prosecutor before the filing of the death penalty notice; (2) defense counsel did not immediately or adequately explore Brett's mental health problems or seek the appointment of mental health experts; (3) Dane did not timely seek the appointment of co-counsel; (4) defense counsel did not timely seek appointment of investigators; (5) defense counsel did not determine Dr. Stanulis was unqualified to render the diagnoses they sought, nor move the court to appoint a new expert; (6) defense counsel did not seek to continue the trial date to more fully assess Brett's diabetes or fetal alcohol exposure; and (7) defense counsel did not adequately prepare their approach for the *607 penalty phase. Schwartz testified that any Clark County local practices that might have impeded defense counsel's efforts are not relevant in evaluating the Sixth Amendment standard, which is a constitutional standard and not a regional standard.
Joan M. Fisher, a supervising attorney for the capital habeas corpus unit in Moscow, Idaho, and former prosecutor for King County, testified at the reference hearing on the performance of Brett's trial counsel. Fisher testified that Brett received ineffective assistance of counsel in part for the following reasons: (1) Dane did not promptly seek the appointment of co-counsel; (2) defense counsel did not promptly seek the appointment of investigators; and (3) defense counsel failed to retain the services of a qualified expert on fetal alcohol syndrome or effect. Fisher based her opinions upon her personal experience, and the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (Feb.1989).
Professor John A. Strait, an experienced criminal litigator, consultant, and professor of law at Seattle University School of Law, also testified at the reference hearing concerning the performance of Brett's trial counsel. Professor Strait opined that defense counsel "did not meet the standard of care of a reasonably competent criminal trial lawyer in Washington in investigating and preparing for the penalty phase or otherwise the mental status testimony of Mr. Brett." 11A Reference Hr'g Report of Proceedings (Nov. 13, 1998) at 1329-30. According to Professor Strait, the defense fell below the standards of Sixth Amendment competence by, among other things: (1) not promptly seeking the appointment of co-counsel; (2) failing to present a mitigation package to the prosecutor before filing of the death penalty notice; (3) failing to promptly investigate mental health issues; (4) failing to seek the earlier appointment of investigators; (5) failing to seek the earlier appointment of mental health experts; (6) failing to seek the appointment of qualified mental health experts, and failing to request a continuance to locate such experts; and (7) discussing fetal alcohol issues in the penalty phase of Brett's trial without calling a qualified expert. Professor Strait testified that the Sixth Amendment standard of competence does not vary from county to county and, even if the defense believed the trial court would deny a continuance motion based upon local practices, counsel nonetheless should have filed the motion to establish a record.
The testimony and evidence presented at the reference hearing, along with the complete record before us, establish the following: (1) defense counsel knew Brett had physical and mental problems; (2) medical evidence was available at the time of trial preparation if defense counsel had conducted a reasonable investigation; (3) defense counsel failed to conduct a reasonable investigation into Brett's physical and mental conditions; and (4) defense counsel's performance was not reasonable under all of the circumstances of this case. Therefore, Brett received ineffective assistance of counsel under Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. When defense counsel knows or has reason to know of a capital defendant's medical and mental problems that are relevant to making an informed defense theory, defense counsel has a duty to conduct a reasonable investigation into the defendant's medical and mental health, have such problems fully assessed and, if necessary, retain qualified experts to testify accordingly.
Consistent with this approach is Caro v. Calderon, 165 F.3d 1223 (9th Cir.), cert. denied, 527 U.S. 1049, 119 S.Ct. 2414, 144 L.Ed.2d 811 (1999). In Caro, counsel was aware of Caro's extraordinary acute and chronic exposure to neurotoxicants, yet failed to consult either a neurologist or a toxicologist, both being experts on the effects of chemical poisoning. Caro, 165 F.3d at 1226. Counsel further failed to provide the "experts" who did examine Caro with the information necessary to make an accurate evaluation of Caro's neurological system. Caro, 165 F.3d at 1226-27. The Ninth Circuit discussed counsel's ineffective assistance in relation to both the guilt and penalty phases, although the court ruled only on the penalty phase. Caro, 165 F.3d at 1228. The court found the type of mitigating evidence omitted to be precisely the type of evidence *608 most likely to affect a jury's evaluation of Caro's punishment. Caro, 165 F.3d at 1227. Concluding Caro had received ineffective assistance of counsel, the court stated:
Counsel have an obligation to conduct an investigation which will allow a determination of what sort of experts to consult. Once that determination has been made, counsel must present those experts with information relevant to the conclusion of the expert.
Caro, 165 F.3d at 1226; see also Bloom v. Calderon, 132 F.3d 1267, 1277 (9th Cir.1997), cert. denied, 523 U.S. 1145, 118 S.Ct. 1856, 140 L.Ed.2d 1104 (1998).
We agree with the Ninth Circuit's approach in Caro, which is consistent with Strickland, and find it analogous to the present case. Here, defense counsel did almost nothing. The only expert sought by counsel to evaluate Brett's fetal alcohol effect was a psychologist wholly unqualified to render a medical diagnosis of Brett. Dr. Stanulis informed defense counsel of this fact immediately. However, neither Dane nor Foister moved for the appointment of a qualified expert. Whatever testimony Dr. Stanulis could have offered was further compromised by defense counsel's failure to deliver Brett's records to him until two days before trial. See Bloom, 132 F.3d at 1277-78 (failure to gather or deliver relevant records to examining physician was ineffective assistance of counsel). Had the available medical evidence been pursued by counsel at the time of trial preparation, at least some type of informed defense theory could have been argued in both the guilt and penalty phases. See Sanders, 21 F.3d at 1456-57; Bean v. Calderon, 163 F.3d 1073, 1079 (9th Cir.1998) (failure to develop penalty phase presentation is a deficiency in trial preparation, not trial strategy), cert. denied, 528 U.S. 922, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999).

CONCLUSION
The record and reference hearing testimony establish that medical and psychiatric opinion was available to support a defense theory at the time of Brett's trial preparation. Had counsel performed a reasonable investigation into Brett's medical and psychiatric conditions, counsel would have discovered such evidence and opinion existed in 1991 and 1992. Furthermore, at the reference hearing all three legal experts testified that failure to seek appointment of co-counsel was ineffective to the extent it prevented defense counsel from providing a mitigation package to the prosecutor prior to the filing of the death penalty notice. Failure to seek appointment of co-counsel further contributed to defense counsel's subsequent failure to competently investigate Brett's severe mental disorders.
After considering this testimony, we conclude that when counsel knew or had reason to know of a mental defect or illness affecting their client in a possible death penalty case, counsel could and should have: (1) promptly sought the appointment of co-counsel; (2) presented a mitigation package to the prosecutor before a death penalty notice was filed; (3) promptly investigated relevant mental health issues; (4) sought a timely appointment of investigators; (5) sought a timely appointment of qualified mental health experts; and (6) adequately prepared for the penalty phase by having relevant mental health issues fully assessed and by retaining, if necessary, qualified mental health experts to testify accordingly. While the failure to perform one of these actions alone is insufficient to establish ineffective assistance of counsel, the failure to perform the combination of these actions establishes that defense counsel's actions in Brett's trial were not reasonable under the circumstances of the case.
Therefore, we find Brett's counsel's representation "fell below an `objective standard of reasonableness.'" Caro, 165 F.3d at 1226 (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). Counsel did not conduct a reasonable investigation into Brett's medical conditions and the possible mental effects of such severe conditions. Thus, Brett's counsel was unable to make informed decisions about how to best represent him in both the guilt and penalty phases of the trial. We find Brett has shown by a preponderance of the evidence there is a reasonable probability that, but for counsel's errors, the results of his trial would have been different.
*609 Accordingly, we grant Brett's personal restraint petition, reverse his conviction, vacate his sentence of death, and remand for a new trial.
ALEXANDER, C.J., SMITH, MADSEN, SANDERS, IRELAND, BRIDGE, JJ., and GUY, J.P.T., concur.
TALMADGE, J.[*] (concurring).
While I agree with the majority's disposition of James Brett's petition, I do not believe the result should be justified on the grounds advanced by the majority. Many of the grounds stated in the majority opinion for granting the petition have previously been resolved on direct appeal. See State v. Brett 126 Wash.2d 136, 892 P.2d 29 (1995).[1] The majority sees the representational issues with 20/20 hindsight, critiquing and deconstructing trial counsel decisions that did not necessarily amount to ineffective assistance of counsel.
However, we must grant the petition, and therefore, I concur with the majority. We disbarred the lead lawyer for Brett's defense for conduct bearing on his representation of Brett, and occurring contemporaneously with Brett's defense. Given that counsel was manifestly ineffective, justice requires no less.
The majority has properly articulated the standard under the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution with respect to the right of a criminal defendant to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 684-86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Hendrickson, 129 Wash.2d 61, 77, 917 P.2d 563 (1996). Given the significant issues at stake in a capital case, we should find that counsel's representation of a client falls below an objective standard of reasonableness as a matter of law when that lawyer is disbarred for conduct contemporaneous in time with their representation of a capital defendant and that conduct affects their representation of that client.
Brett's counsel, Lee Dane, was disbarred by this Court for conduct that was contemporaneous with his representation of Brett. See In re Dane, No. 06587 (Wash. Supreme Ct. Mar. 27, 2000). Dane submitted a memorandum in a criminal case arising out of the same conduct for which he was disbarred admitting he suffered from bipolar disorder, depression, and problems with concentration during the time he represented Brett. Def.'s Sentencing Mem. (Mem.) at 2, State v. Dane, No. 99-1-00481-7 (Clark County Super. Ct. Sept. 30, 1999).[2] Dane's conduct was so serious *610 as to merit criminal capability and to justify his disbarrment.
A lawyer disbarred under such circumstances lacked the ability to bring appropriate professional judgment to bear on a client's representation and ultimately could not provide an adequate defense to a defendant facing capital charges. Counsel's defense of Brett can hardly have been effective for purposes of the Sixth Amendment and article I, section 22 of our constitution given the weight of the issues of guilt and punishment present. I would therefore grant the petition and require a new trial without using this case as an occasion to alter the standard for ineffective assistance of counsel, as I believe the majority does here.
NOTES
[1] At the last minute, defense counsel presented a different witness. However, this witness was not qualified to testify concerning Brett's medical conditions and the mental effects, did not make an individualized diagnosis of Brett, and provided erroneous testimony concerning fetal alcohol effect.
[*] Justice Philip Talmadge is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend.38).
[1] For example, the failure of Brett's trial counsel to secure a continuance to obtain an expert opinion on Brett's possible fetal alcohol syndrome or fetal alcohol effect was addressed on direct review. Brett, 126 Wash.2d at 202-04, 892 P.2d 29. Moreover, the dissent even suggested Brett's trial counsel was ineffective for failing to contact such experts on a timely basis, 126 Wash.2d at 219 n. 1, 892 P.2d 29 (Utter, J., dissenting), a contention apparently rejected by the majority.
[2] That memorandum noted in pertinent part:

In 1987, Mr. Dane sought professional help from Rick Keyser, a psychiatric nurse practitioner, and Harry Dudley, a psychologist. From October, 1987, up through June, 1994, Mr. Dane consulted with Mr. Keyser. At that time, Mr. Keyser's diagnosis was depression and bipolar disorder. Mr. Dane reported problems of concentration and attention spans, impaired sleep and would oftentimes experience highs and lows in his general mood outside of normal ranges. During this period of time, Mr. Dane tried nine different antidepressants, some of which seemed helpful, but eventually all were ceased due to the side effects....
In Mr. Keyser's professional opinion, Mr. Dane clearly suffers from bipolar disorder. In a note to counsel, Mr. Keyser diagnoses Mr. Dane, "at the very least, Bipolar II and possibly Bipolar I." Bipolar II refers to individuals who experience major depressive episodes, possibly periods of dysthymia (low level, chronic depression) and occasional episodes of hypomania, characterized by expansiveness, euphoria or agitation. Hypomanics, in Mr. Keyser's opinion, experience increased periods of energy, productivity, but also experience decreased need for food or sleep, periods of agitation without provocation and mild impairment of concentration, attention span, judgment and impulse control.
In discussing the effects of Bipolar I, Mr. Keyser notes that individuals with that diagnosis have experienced major depressive episodes, possible dysthymia, and episodes of full-blown mania resulting in moderate to severe instability on a personal level, vocationally, financially and sexually. According to Mr. Keyser, individuals with this diagnosis tend to self-medicate with drugs and alcohol (50+/%) and exhibit an increased propensity to addictions in general.
Mem. at 2-3.