# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56163-8-II |
| Respondent, | |
| v. | |
| JERMOHNN ELIJAH NATHANIEL GORE, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. – Jermohnn Gore was originally sentenced to 82 years confinement for crimes he committed at the age of 16. His case was remanded for resentencing in light of his youthfulness, and he received a 35-year sentence. At his resentencing hearing, he was represented by an attorney who had "no idea" about the facts of the case and who failed to develop mitigation evidence such as expert testimony. Gore now appeals, arguing that he received ineffective assistance of counsel at his resentencing and that the court failed to meaningfully consider his youthfulness.

We conclude that Gore received ineffective assistance of counsel at his resentencing hearing. Accordingly, we reverse and remand for resentencing.

FACTS

In 2015, Jermohnn Gore, Alexander Kitt, and Clifford Krentkowski were in a car driven by Lance Milton-Ausley. At the time, Gore was 16 years old and Kitt was 23 years old. All four

were members of the Hilltop Crips gang, and they set out to conduct a retaliatory drive-by shooting at a convenience store frequented by a rival gang. Brandon Morris, a non-gang-affiliated bystander, was killed[1] in the drive-by.

Following a jury trial, Gore was convicted of first degree murder, second degree felony murder, unlawful possession of a firearm, four counts of first degree assault, and intimidating a witness. In 2016, he was sentenced to 984 months (82 years), which included consecutive terms for firearm enhancements.

Gore appealed his sentence, arguing in relevant part that the trial court failed to consider his youthfulness before imposing a *de facto* life sentence. *State v. Kitt*, No. 49534-1-II, slip op. at 20 (Wash. Ct. App. June 18, 2019) (published in part), https://coa2web.courts.wa.gov/content/pubdocs/pubopn/2018-19/49534-1.19.docx. This court, in the unpublished portion of a partially published opinion, remanded Gore's case for resentencing with instructions to conduct a *Miller*[2] hearing. *Id.* at 47.

On remand, the State asked that Gore be sentenced to 360 months for first degree murder plus 60 months on a firearm enhancement, with all other sentences to be imposed concurrently, for an ultimate sentence of 420 months (35 years). Defense counsel asked the court to fashion a sentence based upon age, with Gore to be released when he reached the age of 30, which would have been a sentence of approximately 148 months (12 years, 4 months). The four-page defense

---

[1] It is unknown whether Kitt or Gore shot Morris, perhaps because they used identical weapons. Krentkowski had a different type of weapon but did not fire any shots.

[2] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

memorandum opened by discussing Gore's mother's "heavy" drinking during pregnancy and went on to emphasize his traumatic childhood. Clerk's Papers (CP) at 32.

At Gore's resentencing hearing, his attorney stated that he had "no idea about what the facts [we]re in this case" but that he was nonetheless prepared to proceed. 1 Verbatim Report of Proceedings (VRP) at 4. The State then presented its argument, in which it compared Gore's case to the case of Zyion Houston-Sconiers.[3] Gore's attorney then presented his argument, focusing on Gore's traumatic childhood, rehabilitation efforts, and hopes for the future. He did not, however, call any experts, present any expert reports, or call any witnesses from the Department of Corrections to corroborate Gore's rehabilitation argument. Gore himself spoke, touching on the same themes as his attorney and expressing remorse.

The trial court then listed the *Miller* factors and opined on each. During this portion of the hearing, the court acknowledged that Gore's "family and home environment were detrimental to his . . . maturation and development" and that "his peers also negatively influenced him." *Id.* at 38. But it went on to compare Gore to his 23-year-old codefendant, stating that:

> [i]n this case, of course, the most similar factually, but for his age, is Mr. Kitt. Because the testimony that, uh, the jury found to be true was that it was Mr. Gore and Mr. Kitt who were the shooters, and found them both guilty of the same crimes. And Mr. Kitt, as Mr. Greer pointed out, was sentenced to 1,010 months because he was 23 years, five months and sixteen days old at the time of the shooting. And otherwise, there is *on [sic] factual difference* between him and Mr. Gore. . . .

---

[3] *See State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). The State noted that both Gore and Houston-Sconiers had histories of gang involvement and that Houston-Sconiers had eventually reoffended. The prosecutor then asked, "how do you predict and say that Mr. Gore, Jermohnn Gore[,] is going to be different than all the others in this situation?" 1 VRP at 11. The prosecutor went on to argue that "Houston-Sconiers' judge, Judge Hickman, took a big chance. That didn't work out. And it's the same exact, uh -- it's -- it's very similar, I should say, the circumstances, Mr. Houston-Sconiers and Jermohnn Gore." *Id.* at 12.

> And quite honestly, it's *difficult for me to -- to use the word "child"* -- that's the word out of the *Houston-Sconiers* case -- when considering Mr. Gore or any of his co-Defendants. . . .
>
> I've already spoke to the fact that *Mr. Kitt and Mr. Gore, for all practical purposes, are -- are in exactly the same spot*. And I'm sure if Mr. Kitt were here, we would hear a similar story about his, um, youth, about what he experienced as a child and the lack of support and things that he was taught. You know, lots of people, unfortunately, don't have the best childhood, or are victims of -- of domestic violence or other things. And they don't necessarily grow up to shoot others.

*Id.* at 39-41 (emphasis added).

The court also expressed frustration with the case law and repeatedly invoked the idea of retribution, opining that:

> it's difficult to read all of this line of case law, uh, where there is *virtually no mention of responsibility or punishment* for the crime that was committed when -- especially when there's been a life that was cut short. And no mention of the victim, and how that factors into the Court's consideration. Certainly, the sentencing of defendants is *supposed to include, or part of the purpose of sentencing is punishment*. . . .
>
> And I -- you know, part of what is disturbing to me and -- is, in this line of cases, is, um, that *we don't hold people personally responsible*. Miller, at fourteen years of age -- you talk about differences in age and maturation. I think there's a *huge difference between a fourteen-year-old and a sixteen-year-old*, quite frankly. I think the maturity level when you're a young person goes up exponentially every year, or potentially does, in a normal maturing person. Very different than, say, a 21 to a 23-year-old. I don't think you mature as much as you get older in a one or two year timespan. But I think you do a lot in, um, from fourteen to sixteen. And by sixteen, Mr. Gore knew and understood that by shooting at a group of people, uh, they could certainly be injured or die. He understood that consequence.

*Id.* at 41-43 (emphasis added).

Ultimately, the trial court adopted the State's recommended sentence of 420 months (35 years), including 360 months of flat time. Although Gore's ultimate sentence was below the statutory range, the trial court stated that it reached this sentence "[d]espite no substantial and

4

compelling reasons[4] justifying an exceptional sentence outside and below the standard range." CP at 69. The court found that Mr. Gore's crimes did not evidence transient immaturity, and that his "family circumstance and troubled childhood do not excuse or explain his acts of violence and murder." *Id.* The court specifically "[did] not find that a 16-year-old doesn't know right from wrong, despite immaturity" and noted that "[t]he defendant indicated he has been a model prisoner since being incarcerated on this case (although no documentation was presented in support of this claim)." *Id.* at 69, 68.

Shortly after his resentencing, Gore moved to vacate the court's judgment and sentence. He argued that his youthfulness was not meaningfully considered at his resentencing because no mitigation packet or formal evaluation was performed. The court heard arguments on the motion, during which Gore's attorney stated that the case "fell through the cracks" and said that therapists and mitigation specialists were difficult to obtain due to the COVID-19 pandemic. 2 VRP at 55. The court determined that the motion was not properly before the court and declined to set aside the judgment or sentence.

Gore now appeals, arguing that he was denied effective assistance of counsel at his resentencing hearing and that the resentencing court clearly misapplied the law by failing to meaningfully consider his youth.

---

[4] In contrast, the judgment and sentence reflected that such substantial and compelling reasons did exist for the court's exceptional sentence.

DISCUSSION

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Gore argues that he was denied effective assistance of counsel because his attorney (1) "failed to adequately investigate or prepare for [his] resentencing hearing," such as by preparing mitigation evidence in the form of expert testimony, a mitigation packet, or rehabilitation evidence from prison personnel; and (2) failed to object to the prosecution's argument comparing Gore to a fellow gang member as an improper guilt-by-association argument. Br. of Appellant at 25.

The State responds that Gore's attorney's performance was reasonable because (1) his briefing and argument reflected strategic decisions, and no precedent requires attorneys to hire experts or prepare mitigation packets for *Miller* hearings; and (2) the prosecution's comparison was not used to show the defendant's character.

We hold that Gore was denied effective assistance when his attorney failed to gain a basic understanding of the facts before appearing at the *Miller* hearing and failed to present any evidence in mitigation on Gore's behalf.

A. LEGAL PRINCIPLES

The right to counsel includes the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that defense counsel's conduct was deficient, . . . and (2) that the deficient performance resulted in prejudice." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). We need not address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Performance is deficient if it falls below an objective standard of reasonableness based on the record established at trial. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption that counsel performed reasonably, but this presumption can be overcome when " 'there is no conceivable legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 33 (quoting *Reichenbach*, 153 Wn.2d at 130). To establish prejudice, the defendant must show that " 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.' " *Id.* at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

B. APPLICATION

Gore's first argument is that his attorney failed to adequately investigate or prepare for his resentencing hearing.

To perform competently, defense counsel must conduct a " 'reasonable investigation.' " *State v. Lopez*, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018) (quoting *State v. Boyd*, 160 Wn.2d 424, 434, 158 P.3d 54 (2007)). When necessary to the preparation of an adequate defense, a reasonable investigation may require the engagement of an expert. *Id.*; *see also State v. A.N.J.*, 168 Wn.2d 91, 112, 225 P.3d 956 (2010) (holding that "depending on the nature of the charge and the issues presented, effective assistance of counsel may require the assistance of expert witnesses to test and evaluate the evidence against a defendant."). Whether expert assistance is a necessary component of counsel's investigation is evaluated based on the information counsel had at the time of the investigation. *See In re Pers. Restraint of Brett*, 142 Wn.2d 868, 871, 877, 880, 882, 16 P.3d 601

(2001). Counsel must therefore "conduct an investigation which will allow a determination of what sort of experts to consult." *Id.* at 881 (quoting *Caro v. Calderon*, 165 F.3d 1223, 1226 (9th Cir. 1999)) (holding that a capital defendant received ineffective assistance at penalty phase where counsel knew of defendant's mental impairments yet failed to adequately prepare, in part, by pursuing expert assistance).

Gore argues that a reasonable attorney would not have appeared without having first read the case file, understood the facts of the case, and read the Court of Appeals decision remanding for resentencing. He also complains that his attorney submitted, only two days before the hearing, a four-page sentencing brief. Gore further argues that his attorney should have presented mitigation evidence in the form of a mitigation packet, mitigation specialist evaluation, other expert testimony about juvenile brain development, and evidence about his conduct in prison.

The State responds with three arguments. First, it argues that Gore's attorney made a tactical decision to downplay the facts of the offense in order to focus the court's attention on Gore's rehabilitation. It also notes that filing a short brief can be more effective than a longer one. Second, it argues that the supreme court has never held that expert witnesses and risk assessment tools are required in *Miller* hearings and thus, that "evaluations and witnesses are neither required nor effective." Br. of Resp't at 29. And finally, it argues that no expert was needed in Gore's resentencing because courts have a long history of considering adolescent brain development in juvenile sentencing.

But the State's arguments are unpersuasive. Its first argument ignores the difference between downplaying the importance of the facts of the underlying crime and failing to familiarize oneself with those facts in the first instance. Gore's attorney admitted that the case "fell through

the cracks" and that he had "no idea about what the facts [we]re in this case." 2 VRP at 55; 1 VRP at 4. This shows serious "inadequacies in rudimentary trial preparation" that cannot be considered strategic decisions. *Bean v. Calderon*, 163 F.3d 1073, 1080 (9th Cir. 1998); *see also Brett*, 142 Wn.2d at 881 (failure to develop mitigating evidence is not a strategic decision where "defense counsel did almost nothing" to investigate potential defense). By appearing at a *Miller* hearing without an understanding of the facts, Gore's attorney's performance fell "well below prevailing professional norms and therefore constitutes deficient performance." *Lopez*, 190 Wn.2d at 123.

The State's second and third arguments, that "evaluations and witnesses are neither required nor effective[,]" and that trial court judges sentencing juveniles no longer need to be presented with mitigation evidence related to juvenile brain development because they already have all the information they need, fail because they fundamentally ignore the circumstances of this case. Br. of Resp't at 29. Here, Gore's attorney had reason to know of his client's exposure to alcohol in utero and traumatic family life, something not all juvenile offenders experience. Gore's attorney was also aware that the same judge had previously sentenced Gore to a *de facto* life sentence and would benefit from additional education on the hallmark features of youth. While we agree there is no *blanket requirement* that defense attorneys defending clients at *Miller* hearings hire and present the testimony of expert witnesses, the facts of this case demonstrate that counsel performed deficiently by not engaging an expert.

And even if the engagement of an expert were not necessary to an adequate defense at Gore's resentencing hearing, counsel's lack of basic preparation alone requires reversal. It is difficult to conceive of a sentencing hearing involving convictions as serious as those in this case

in which it would be acceptable for defense counsel to admit that the case "fell through the cracks" and that he had "no idea about what the facts [we]re." 1 VRP at 55; 2 VRP at 4.

With respect to the State's argument that trial judges have become so familiar with the evidence on brain science that no further elucidation is necessary, we disagree. While it may be true that some judges are well aware of the hallmark features of youth, this does not absolve defense counsel of their "affirmative duty to ensure that proper consideration is given" to the hallmark features of youth *as applied to the case at hand*. *State v. Ramos*, 187 Wn.2d 420, 443, 387 P.3d 650 (2017). Indeed, the crux of *Miller* is that juvenile sentencing must be an *individualized* endeavor. *See Miller*, 567 U.S. at 489.

In sum, Gore has shown that his attorney failed to adequately prepare for his resentencing hearing and, thus, performed deficiently. We next must consider whether Gore was prejudiced by this deficiency. *Reichenbach*, 153 Wn.2d at 130.

Here, it is reasonably probable that Gore would have received a lesser sentence if his attorney had competently prepared for the *Miller* hearing. Defense counsel asked the court to fashion a sentence based upon age, releasing Gore at the age of 30.[5] The trial court instead adopted the prosecution's recommended sentence of 420 months (35 years), including 360 months of flat time. Although Gore's ultimate sentence was below the statutory range, the court stated that it reached this sentence "[d]espite no substantial and compelling reasons justifying an exceptional sentence outside and below the standard range." CP at 69.

_____

[5] Based on Gore's original sentencing date of October 12th, 2016, and his birth date of January 30th, 1999, this recommendation would translate to approximately a 148-month sentence (12 years, 4 months).

10

Notably, the trial court found it "difficult . . . to use the word 'child' " when considering Gore. 1 VRP at 40. Further, the court opined at sentencing that "there's a huge difference between a fourteen-year-old and a sixteen-year-old" and that "maturity level when you're a young person goes up exponentially every year, or potentially does, in a normal maturing person." *Id.* at 42. The court went on to declare that "Mr. Kitt [who was 23] and Mr. Gore, for all practical purposes, are . . . in exactly the same spot." *Id.* at 41. This indicates to us that the court required more information about brain development and impulse control of 16-year-olds in general, and about Gore in particular, to meaningfully consider his immaturity at the time of the crime. Given the trial court's comments, presenting expert testimony was reasonably likely to have persuaded the court to reach a lower sentence.

Additionally, the trial court repeatedly invoked the idea of retribution during the resentencing. *Id.* ("[I]t's difficult to read all of this line of case law, uh, where there is virtually no mention of responsibility or punishment for the crime."); *Id.* at 42 ("Certainly, the sentencing of defendants is supposed to include, or part of the purpose of sentencing is punishment."). But it gave only cursory treatment to the idea of rehabilitation, and noted in its formal findings the lack of corroborating evidence for Gore's rehabilitation argument. *See* CP at 68 ("The defendant indicated he has been a model prisoner since being incarcerated on this case (although no documentation was presented in support of this claim)").

The court's emphasis on retribution, alongside its dismissal of Gore's potential rehabilitation and its equating of Gore's culpability with his 23-year-old co-defendant, persuades us that Gore suffered prejudice as a result of counsel's lack of preparedness for Gore's resentencing

hearing. In demonstrating both deficient performance and prejudice, Gore has established that he received ineffective assistance of counsel and is entitled to resentencing.[6]

CONCLUSION

We reverse Gore's sentence and remand this matter to the superior court for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

WORSWICK, J.

PRICE, J.

---

[6] Because we conclude that Gore was denied effective assistance of counsel based on his attorney's deficient investigation, we need not consider whether Gore was denied effective assistance of counsel when defense counsel failed to object to the prosecution's comparison between Gore and Zyion Houston-Sconiers. For the same reason, this court need not consider Gore's argument that his *Miller* hearing was legally insufficient.