IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of:<br><br>JAMALL SHONREE BAKER,<br><br>                   Petitioner. | No. 83696-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Jamall Baker petitions for relief from unlawful restraint claiming that he was not competent to enter his guilty plea and he received ineffective assistance of counsel. He contends the competency evaluations failed to consider medical records showing anoxic brain injury after cardiac arrest. Because we cannot ascertain whether the medical records would have altered the evaluators' opinions on Baker's competency or whether his trial counsel was ineffective with regard to this aspect of his case, we remand to the trial court to conduct a reference hearing.

FACTS

Our opinion on Baker's direct appeal set out these underlying facts:

In February 2008, Baker was arrested for the murder of Nicky Schoonover. He was then brought to the emergency room for an overdose after apparently ingesting multiple substances around the time of his arrest. In April, the court ordered Baker to be evaluated by Western State Hospital [WSH] for competency. A psychologist at [WSH] ultimately evaluated Baker three times, and an independent psychologist also evaluated Baker in January 2010. Both psychologists concluded that although Baker suffered from mental illness, he was competent to stand trial. On February 19, 2010, the court ordered that Baker was competent.

State v. Baker, No. 80227-5-I, slip op. at 1-2 (Wash. Ct. App. August 2, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/802275.pdf. In March 2010, Baker pleaded guilty to one count of murder in the first degree. Id. at 2. The court accepted Baker's plea and sentenced him to 325 months. Id.

On direct appeal, Baker challenged the validity of his plea, claiming he was not properly informed of the sentencing consequences and that this misinformation constituted ineffective assistance of trial counsel. Id. Baker also challenged the length of his community custody term and inclusion of his out-of-state offenses in his offender score. Id. at 2-3. This court concluded that none of Baker's asserted errors rendered his plea invalid, but remanded for resentencing to strike or clarify several conditions of community custody.[1] Id. at 8-12. The Washington Supreme Court denied review. State v. Baker, 198 Wn.2d 1033, 501 P.3d 132 (2022).

Baker then filed a CrR 7.8 motion to withdraw his plea in the superior court. As one of the bases for withdrawing his plea, Baker raised the issue of his competency to plead guilty because he was "neurologically not competent due to an anoxic assault." The "anoxic assault" referred to the aftermath of ingesting drugs around the time of his arrest; Baker subsequently experienced a seizure and cardiac arrest requiring resuscitation and hospitalization for several days. In support of his motion, Baker submitted his hospital records, which he claimed should have been considered in

---

[1] In this PRP, Baker again claims he was not properly informed of the sentencing consequences on the same three grounds. These claims were dismissed as frivolous under RAP 16.8.1(b). We do not review them here.

2

evaluating his competence, as well as an expert report from Dr. Galina Nikolskaya, a neurologist he retained to conduct a record review and to opine on his competence.

The superior court transferred the motion to this court for consideration as a personal restraint petition (PRP). After counsel was appointed on his claim that his plea was not voluntary, Baker advised this court that he had also raised a claim for ineffective assistance of counsel, and we ordered supplemental briefing. Thus, we address both his claims regarding competency and ineffective assistance of counsel.

ANALYSIS

In a PRP, the court of appeals will grant relief to a petitioner who is subject to unlawful restraint. RAP 16.4(a). The restraint is unlawful if it violates the Constitution of the United States or the Constitution or laws of the State of Washington. RAP 16.4(c)(2). Relief by way of a collateral challenge to a conviction is extraordinary, and a petitioner must meet a high standard before this court will disturb an otherwise settled judgment. In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). A petitioner must show a constitutional error that resulted in actual and substantial prejudice or a nonconstitutional error involving a fundamental defect that inherently results in a complete miscarriage of justice. In re Pers. Restraint of Swagerty, 186 Wn.2d 801, 807, 383 P.3d 454 (2016). A showing of actual and substantial prejudice requires that there be an error of substance, not merely of procedure. State v. Buckman, 190 Wn.2d 51, 68, 409 P.3d 193 (2018). A personal restraint petitioner bears the burden of demonstrating prejudice. In re Pers. Restraint of Brockie, 178 Wn.2d 532, 539, 309 P.3d 498 (2013).

We have three available options when reviewing a PRP. In re Pers. Restraint of Yates, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). We may dismiss the petition if the petitioner fails to make a prima facie showing of actual prejudice for a constitutional error or a fundamental defect resulting in a complete miscarriage of justice for a nonconstitutional error; we may grant the petition if the alleged error is sufficiently proven; or we may transfer the petition to a superior court for a reference hearing if the petitioner makes the requisite prima facie showing but the merits of the claim cannot be determined by the record. Id. at 17-18. "To establish a prima facie showing required for a reference hearing, a petitioner must offer 'the facts underlying the claim of unlawful restraint and the evidence available to support the factual allegations.' " Id. at 18 (quoting In re Pers. Restraint of Rice, 118 Wn.2d 876, 885–86, 828 P.2d 1086 (1992)).

Here, Baker raises constitutional challenges to his restraint, claiming violations of his due process right not to be tried when incompetent to stand trial and of his right to effective assistance of counsel.[2] Baker claims he should be allowed to withdraw his plea because his competency evaluations did not consider the medical records related to his overdose and, therefore, failed to meet the standard of care for such evaluations. He also claims he received ineffective assistance of counsel because trial counsel failed to ascertain there were unreviewed medical records and failed to ensure the evaluators review those records.

---

[2] The State argues Baker's challenge is statutory under RCW 10.77.060 and, therefore, he must show a fundamental defect that resulted in a complete miscarriage of justice in order to prevail on this PRP. Because we determine that remand is appropriate here, we need not resolve which standard applies.

A criminal defendant has a fundamental right not to be tried while incompetent to stand trial. State v. Heddrick, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). Washington law affords greater protection in its codification of this right: "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050; Heddrick, 166 Wn.2d at 904. The failure to follow procedures to protect this right is a denial of due process. Id. The competency standard for pleading guilty is the same as the competency standard for standing trial. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 862, 16 P.3d 610 (2001). "A determination that a criminal defendant is not competent to stand trial precludes his effective entry of any plea." Id. at 864.

The procedures for determining competency outlined in RCW 10.77.060 are mandatory. Heddrick, 166 Wn.2d at 904. When there is any doubt about a defendant's competency to stand trial, the trial court must order a qualified expert or professional person "to evaluate and report upon the mental condition of the defendant." RCW 10.77.060(1)(a). If an appointed expert conducts the examination in a substantially unqualified manner, "the fundamental purpose of the requisite appointment, examination, and report will have been thwarted and both the statute and the trial court's order will have been violated." State v. Sisouvanh, 175 Wn.2d 607, 621, 290 P.3d 942 (2012). Therefore, the trial court "has the power and the obligation to ensure that a statutory competency evaluation is conducted in a qualified manner." Id.

Here, the trial court ordered three separate competency evaluations. Dr. Barry Ward, a psychologist at WSH, conducted three evaluations and provided reports dated

June 13, 2008, March 26, 2009, and August 5, 2009. In addition, a psychologist employed by Baker, Dr. Lee Gustafson, provided a report dated January 21, 2010. All four reports included forensic interviews and mental status exams. While noting psychiatric symptoms, the four evaluations all concluded Baker was competent to stand trial. At a contested hearing on competency on February 19, 2010, the court heard testimony from both Dr. Ward and Dr. Gustafson. Baker's counsel acknowledged that the doctors agreed Baker could assist in his defense competently. After the hearing, the trial court issued findings of fact and conclusions of law concluding Baker was competent to stand trial.

Baker contends his four competency evaluations were insufficient to support the conclusion that he was competent because the evaluators failed to review the medical records from his cardiac arrest due to overdose, which detailed the anoxic brain injury. In support, Baker provides a May 2021 report from Dr. Galina Nikolskaya, who assessed his competence and whether the prior expert opinions on competence were "within the standard of care given the conclusions were reached without a full review of medical history." Dr. Nikolskaya opined:

> Mr. Baker's condition of permanent anoxic encephalopathy as a result of having suffered cardiopulmonary arrest on 2/24/2008 made him incompetent throughout the time of proceedings including the time when he entered into a plea without understanding. From a neurological standpoint, there is solid evidence that Mr. Baker was not competent to participate in his legal defense many months following his cardiac arrest. Even having made some recovery, given the markers seen in the 2008 medical records, along with the symptoms endorsed, Mr. Baker's brain damage post cardiac arrest was permanent leading to significant cognitive limitations.

6

> The standard of care for cognitive competence determination by any mental health professional, including clinician or a forensic neuropsychologist, requires that such a professional reviews all of the relevant prior medical records including hospitalizations which can have any conditions that can result in impairment of cognitive function and render a patient incompetent, including history of cardiopulmonary arrest and anoxia. This standard for analysis of cognitive competency was owed to Mr. Baker and this medical standard was clearly not met.

The report further concluded that the prior experts who found Baker competent "did so without having had access to material medical facts about Mr. Baker's cognitive abilities; their opinions reached on his competence did not meet the quality standards required for a medical or neuropsychological opinion to be valid medical opinion, given the conclusions were made based on incomplete data analysis."

The record shows the competency evaluators did not review the medical records from Baker's cardiac arrest. While Dr. Ward requested these hospital records from Providence Everett Medical Center at the time of the first evaluation, he had not received them by the time of his first report. The reports from subsequent evaluations by Dr. Ward do not mention the hospital records among those reviewed. Instead, Dr. Ward based his assessment of the event on Snohomish County jail records and provided this description of the cardiopulmonary arrest:

> [D]uring booking, Mr. Baker appeared "distraught" and was talking "loudly." He fell to the floor, banging his head, "as if he was having a seizure." Emergency responders began CPR and transported him to Providence Everett Medical Center.
> . . . Mr. Baker "ingested a baggy of drugs," sometime just before his arrest and the time of booking. Urinalysis conducted at the hospital was positive for benzodiazepines, cannabis, opioids, and cocaine. Mr. Baker was proscribed Seroquel (antipsychotic), Doxepin (antidepressant), Klonopin (anticonvulsant), and Depakote (anticonvulsant).
> Mr. Baker was transferred back to the jail . . . and was subsequently housed on the Mental Health Unit.

This description of the episode does not indicate that Dr. Ward appreciated the anoxic encephalopathy[3] that resulted from Baker's cardiac arrest and how that could have had a long-term impact on his cognitive ability. Like Dr. Ward, Dr. Gustafson also relied on the Snohomish County jail medical records and described the event in even less detail, noting that "when Mr. Baker was admitted from Providence Hospital after a life-threatening overdose, he appeared to be psychotic."

According to Baker and Dr. Nikolskaya, the competency evaluations conducted without the Providence records fell below the standard of care. "No rule of general applicability can be effectively constructed to govern the adequacy of competency evaluations in every case," and "there is no clear consensus on a standard of practice for competency evaluations." Sisouvanh, 175 Wn.2d at 622. Nevertheless, the trial court "has the power and the obligation to ensure that a statutory competency evaluation is conducted in a qualified manner." Id. at 621. We cannot determine from this record whether Drs. Ward and Gustafson conducted their evaluations in a qualified manner when they were aware of but did not review the Providence medical records. Nor can we determine whether the evaluators would have arrived at a different conclusion about Baker's competency had they reviewed the Providence medical records and known of the anoxia suffered prior to resuscitation. Remand to the trial court for a reference hearing is necessary to determine these facts.

---

[3] Dr. Nikolskaya describes anoxic encephalopathy as "abnormal brain function following an event of cardiac arrest."

Without understanding the impact of these records, we also cannot determine conclusively whether defense counsel was ineffective as to this aspect of Baker's representation. For a successful claim of ineffective assistance of counsel, a defendant must establish both objectively deficient performance and resulting prejudice. State v. Emery, 174 Wn.2d 741, 754-55, 278 P.3d 653 (2012). We approach an ineffective assistance of counsel argument with a strong presumption that counsel provided effective representation. In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). A petitioner can " 'rebut this presumption by proving that [their] attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.' " Davis, 152 Wn.2d at 673 (quoting Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)). This court evaluates the reasonableness of counsel's performance from " 'counsel's perspective at the time of the alleged error and in light of all the circumstances.' " Id. (quoting Kimmelman, 477 U.S. at 384).

In this case, Baker's trial counsel had already identified the need for a competency assessment and initiated the request for such a hearing. The trial court ordered the first and third competency evaluations on motions by Baker's counsel asserting there was reason to doubt competency. Baker's counsel demonstrated sufficient concern about Baker's competency that he arranged for a fourth forensic evaluation by Dr. Gustafson rather than the State's evaluator.

The record is unclear as to when Baker's counsel became aware of the incident that required Baker to be sent to the Providence emergency room, though the incident

9

was noted in Snohomish County jail medical records. At the latest, Dr. Ward's first evaluation would have alerted counsel to the lack of associated medical records and that the jail medical records noted that that Baker "appeared psychotic" after he ingested the drugs and overdosed. However, the record does not show that counsel took any action to ensure that subsequent evaluations included access to the Providence medical records, nor did counsel point out this lack or seek a continuance of the evaluation or the competency hearing in order to obtain the records.

Counsel has a duty to provide an expert with the relevant information that would allow the expert to draw a conclusion. In re Pers. Restraint of Brett, 142 Wn.2d 868, 881, 16 P.3d 601 (2001) (citing Caro v. Calderon, 165 F.3d 1223 (9th Cir.1999) (although aware of defendant's chronic exposure to neurotoxicants, counsel failed to provide examining experts with the information necessary to make an accurate evaluation of neurological system)); State v. K.A.B., 14 Wn. App. 2d 677, 708, 475 P.3d 216 (2020) (counsel had an affirmative duty to investigate which experts were needed to establish diminished capacity and then provide the expert with relevant information). Upon discovering the existence of medical records concerning the overdose and cardiac arrest, Baker's counsel had a duty to ensure the experts could review the records in the context of the competency evaluation, or to challenge an opinion that Baker was competent on the basis that the assessments were not conducted in a qualified manner due to failure to review all relevant records. Moreover, there is no ascertainable strategic advantage to not obtaining the Providence medical records or cross-examining the State's expert on the basis of his opinion in the absence of review

of those medical records, so the failure to ensure a competency evaluation included a review of those records was deficient performance.

As Baker has demonstrated trial counsel's deficiency, we must assess whether the deficiency resulted in prejudice. To establish prejudice, the defendant must show a reasonable probability that the result of the trial would have been different without the attorney's deficient performance. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In the context of a PRP, the petitioner must state specific facts which entitle him to relief. Rice, 118 Wn.2d at 886. Where a petitioner makes at least a prima facie showing of actual prejudice but we cannot determine the merits solely on the record, we will remand for a reference hearing. Id. at 885.

Here, Baker has provided an expert neurological report that his anoxic encephalopathy likely caused brain damage which may have impacted his competency. Baker has also shown that none of the experts who conducted his competency evaluations had reviewed the medical records or knew the severity of the overdose incident. However, we do not know the impact those records would have had on the competency evaluations. We cannot determine whether, had counsel obtained the records or otherwise ensured that Drs. Ward and Gustafson reviewed them, it would have changed their evaluation of Baker's competency. A reference hearing will allow the trial court to make this determination regarding prejudice.

We remand to the trial court for a reference hearing. The trial court will determine whether the evaluations presented to the court in 2008, 2009 and 2010 were conducted

11

in a qualified manner in the absence of any consideration of the relevant medical records; whether review of the Providence records relating to Baker's cardiac arrest and resulting anoxic brain injury would have made a difference in each expert's assessment of Baker's competence to stand trial; and whether counsel's failure to ensure that the competency evaluation included reviewing the additional medical records established a reasonable probability that the result of the competency hearing, and thus, Baker's ability to enter a guilty plea, would have been different.

We remand to the trial court for a reference hearing to be held within 90 days of this decision[4]. The trial court will determine whether the evaluations presented to the court in 2008, 2009 and 2010 were conducted in a qualified manner in the absence of any consideration of the relevant medical records; whether review of the Providence records relating to Baker's cardiac arrest and resulting anoxic brain injury would have made a difference in each expert's assessment of Baker's competence to stand trial; and whether counsel's failure to ensure that the competency evaluation included reviewing the additional medical records established a reasonable probability that the result of the competency hearing, and thus, Baker's ability to enter a guilty plea, would have been different. The trial court shall enter findings of fact, which shall be forwarded to this court within 30 days after the reference hearing.

---

[4] If the trial court determines that additional time is needed to prepare for the hearing it may grant the parties additional time, but this court should be advised of any delay.

Chung, J.

WE CONCUR:

Feldman, J.

Hazelrigg, ACJ